Case number 20-1024, Louisiana Public Service Commission Petitioner versus Federal Energy Regulatory Commission. Mr. Fontham for the petitioner, Ms. Berry for the respondent. Mr. Fontham, good morning. Good morning. Please proceed. May it please the court, my name is Mike Fontham, I represent the Louisiana Public Service Commission. In this case, FERC, relying on six words of a 2009 tariff amendment and applying it to a 2005 regulatory decision, excluded approximately $30 million of legitimate production costs paid by Louisiana ratepayers from the energy bandwidth tariff. I'm going to is that FERC incorrectly interpreted the tariff by relying on a single subordinate clause without considering or addressing the words of the entire tariff amendment or the settlement that the tariff amendment was filed in compliance with or the filing letter which said that the deferrals going forward. And secondly, that FERC's action applying a 2009 amendment to the effects of a regulatory decision made when no one could ever possibly know that the amendment was going to be filed four years later is improper retroactive rate making. I would like to make three or four points about the facts and then I will address those two points of argument. First of all, I know the members of this court may not be familiar with the energy bandwidth tariff, but it was adopted in 2005 in order to eliminate undue discrimination on the energy system. The rough part of rough equalization is plus or minus 11%. Anything beyond plus or minus 11% is unduly discriminatory. The bandwidth tariff was adopted to rely on the books and records of the energy operating companies. In other words, what went onto the books went into the tariff and FERC has always required that the accounting be consistent with FERC requirements. And on many occasions, FERC has overruled accounting errors made by energy. There was an accounting error in this case. It affects deferrals, which bring about credits and debits, which basically do this. A utility has a big cost, it wants to spread it out. So what happens is there will be a credit on the books in the year those big costs arrive at the utility. But the regulatory commission allows the utility to defer that. So the credit happens to take the cost off the books. Then those costs are charged to rate payers later and amortized on the books later. So 100% are captured. They're just captured with different timing. The correct accounting for a deferral as held by FERC in this case is that you recognize that costs are deferred and take them off the books. That takes them off and out of the bandwidth. You then recognize later when the rate payers pay the cost that the costs are being amortized. You add them to the expenses in the books. That puts them back into the bandwidth. In this case, because energy was engaging, as I said, in improper accounting and then changed the accounting, and there are four different or five different operating companies, there was concern about the consistency of the practices. So an amendment, a tariff amendment was adopted in 2009, four years after this deferral. That tariff amendment said that it would exclude from the bandwidth what was on the accounting books. So effectively, the costs would count in 2009 and in later years they would not count. But that change was made, as I said, four years after 2005. The 2005 case, unfortunately, was delayed. The court overruled that delay. The case did not go to hearing until 2016, 11 years after the 2005 costs were incurred. So FERC had a hearing and had to make a determination about a 2005 credit and the debits associated with it. FERC decided, relying on six words in the tariff amendment, which said, or the amortization of previously deferred costs, that the tariff amendment could take out the debits even while it recognized the credit that had occurred in 2005. And that's what we're appealing. Our first point of argument is that the FERC arbitrarily interpreted the tariff amendment. The tariff amendment makes clear, we believe, that it could only apply to new deferrals and the effects of new deferrals going forward. The tariff amendment, which is quoted on page 8 of our brief, says, excluding the effects, plural, debits and credits, plural, resulting from a regulatory decision, singular. A regulatory decision has two effects. First, there's a credit. A regulatory deferral decision has two effects. First, there's a deferral and a credit. And then there are amortizations and the costs are counted. Those are debits. And this says it's going to apply to the effects, both effects of a regulatory decision. And then it says that causes the deferral of the deferred costs. That's what happens after that. And that's what happened in this case. You cannot simply focus... The amendment seems key to the debits and the credits, though. Not key to the decision, the prior regulatory decision. It says exclude from PERP, which is the relevant account here, debits and credits resulting from a prior decision. If the construction of this clause were governed by ordinary principles of retroactivity law, it would cover future credits. Why shouldn't we read it that way? Well, you shouldn't read it that way because it encompasses both. IRC applied it to encompass one. IRC applied it to encompass the amortization of previously deferred costs and not the credit, which occurred in 2005. And the only way, and this is what I was trying to get through, is to encompass debits and credits, both, both. You have to only apply it going forward because the credit occurs first. Okay, this credit had occurred in the past, just like you say, applying normal principles of retroactivity. Well, what they actually did is they didn't apply it to the past credit. They did apply it to the amortization starting in 2009 and going forward. So, they separated it. And you cannot interpret the amendment to apply to half of something done previously and not apply to the rest of it. IRC said it would be retroactive rate making to apply it to the credit. And the debits are effects of that credit, that very same credit. And the only way you can interpret that is, okay, it's going to apply to new deferrals. Now, the second point is we had a settlement agreement. And the settlement agreement, nobody, nobody can test this. The settlement agreement makes it absolutely clear that this is only going to apply to 2009 deferrals and going forward. No past deferrals. This is not contested in any of the briefs. They say, well, that's extrinsic evidence. But the settlement agreement was a contract among all the parties, agreed to by all the parties, filed with FERC and approved by FERC. And it is the agreement under which this tariff amendment was filed to comply with the settlement. Mr. Fontham, if amortization that typically follows a deferral is understood as part of the same regulatory decision as the deferral, I'm just wondering why the text of this amendment separately mentions the amortization. Because, Your Honor, if one is going to occur in one year and the other is going to occur in the other year. So you'll have a, like in this case, we had a deferral that had a credit in 2005. Now, there were no amortizations in 2005. The amortizations occurred in the later years, 2006, 7, 8, and 9. And the way a regulatory decision works because of retroactive rate making, you have to give them approval in advance to defer the cost and collect it later. Because the cost, you know, otherwise would have been recognized in 2005. So any decision that allows a deferral is effectively a guarantee of sorts that they're going to be able to collect it later. That's the only way they can book it. And so they are inextricably intertwined. And is that two separate regulatory decisions? It's typically one, no? Or it's two separate because the deferral decision is made at one time and then as you're going forward and approving later rates, the amortization approval is granted? Well, the way it works, Your Honor, is that the single decision legitimizes both. Now, there might be a later rate case that simply applies the prior deferral decision to say, okay, you can collect this even though it wasn't. It was approved as a deferral. So in your reading, the last dozen or so words are really unnecessary. Effects, debits, and credits resulting from regulatory decision, period. This is, I think, along the same lines as Judge Katsas' question. If the real sort of decisive point for purposes of prospectivity or retroactivity is the regulatory decision, then the separate reference to causing the deferral of the recovery of current year costs, those aren't really two separate things in your view? Well, Your Honor, I think the way these things work, there's lots of things that can cause debits and credits from a regulatory decision. This was making it clear that it was a deferral of costs. These were purchased power costs. And so I just think it's being more complete. So are there situations as a practical matter in which a state regulatory agency issues a deferral without subsequent amortization or with only partial amortization in practice? Utility would never accept that because they may be stuck not recovering the costs. So as it works in practice, is it the case in your experience that deferrals and amortizations aren't really distinct regulatory decisions or actions? They come from the same decision, and so they're not distinct in that sense because it's one package of costs. But clearly, one is a credit, one is a debit, and it's going to add to the costs in one year, and it's going to take off of the costs in the first year. Right. But it sounds like the gravamen of your position is that so goes the one, also goes the other, and that what's happened here is there's been the credit was treated under the pre-settlement agreement regime and then the amortizations under the settlement agreement, and that it bisects these things that actually go together. That's exactly right, Your Honor. You have a pair of shoes and you can't wear either one of them because they're no longer available in the same world. That's true. I think that's the only way you can interpret this amendment. But I do want to emphasize the settlement agreement is just as much a contract affecting rates as the tariff is. Energy followed the settlement agreement to apply the other provisions of the tariff. It was approved by FERC. It's a contract in Boston Edison. The ruling of principle in Boston Edison makes it absolutely clear that you can't pull out the words in the formula and take it away from the contract that called for the words in the formula. In the settlement agreement, no one disagrees. The settlement agreement only deferrals going forward, as the filing letter said. The filing letter, whoops, am I? Sorry, can I ask one more question, which is what you say makes a lot of intuitive sense, but I assume it must be fairly common in situations when you're accounting for these capital expenses or prepaid costs, whatever it is, you have to account for a transaction that takes place over many accounting periods. The accounting rules change in the middle of that time stream. I assume it's fairly common that the change can be applied to the remaining part of that transaction. You buy equipment when the law says you can depreciate it over 30 years. Then 10 years later, the rules change and you have to apply to that transaction, even though on the front end it was made under different rules. Isn't this just a variation on that? No, your honor, it's not. You're right about the accounting rules changing, but this wasn't a change in the accounting rules. The accounting rules are still the same that they were in day one. One thing about a deferral. Sorry, it's a contractual equivalent of that because the parties under the filed rate doctrine can make these decisions for themselves. They're saying they want this transition to work in that way. Yes, to new deferrals. That's what they said. That's what they agreed on. That's what the filing letter said. That's really what the tariff amendment itself says. This was a change to the tariff and what would go into the bandwidth. The accounting never changed. All these costs were being paid by Louisiana rate payers. If you're talking about a deferral, you can change the timing. You cannot change the fact that the costs do get recovered, no matter what you do with the accounting rules. That's just part of the ability of the utility to book it in the first place. I see my time's run out. I hope I get one minute or something for rebuttal. Sure, if there are no more questions. Let me just ask you one more question, Mr. Fontham. What do you make of the or? It seems in the text, the recovery of current year costs or the amortization, it seems like your reading really is viewing that as an and. No, that's not our reading, Your Honor. Our reading is that it says or because only one of the two things will occur in any particular year. Okay. All right. We'll now hear from Ms. Perry. May it please the court, Lona Perry for the commission. The commission in interpreting the perp variable in the bandwidth tariff concluded that there was no other way to read that perp variable other than to read it as excluding from the bandwidth tariff as of 2009 at the amortization of previously deferred costs and the Louisiana's position that it only applies to the deferral of the recovery of current year costs completely excludes everything following the or, which in because this was enacted in 2009 and was effective as of the calculations for the bandwidth tariff in 2009, that phrase necessarily excluded current amortizations booked in 2008 and part of the 2009 calculations that resulted from the 2005 deferral costs. It isn't a strong background rule and assumption and in myriad contexts and that a credit goes together with the amortization that the deferral, these are really two steps of one process. And in fact, I mean, it seems like there's no argument that this isn't quite disadvantageous to LPSC. It does, Your Honor, result in the exclusion of those amortizations, those amortization debits from the bandwidth tariff, but there is no other way to read that language. That language specifically separates the deferral of the recovery of current costs and the amortization of previously deferred costs. I'm sorry, go ahead. I'm just saying with the or in the section, what the section says, if either one of those are excluded, there doesn't, both of them don't have to be excluded. Either one of those are excluded. And here we had current amortization of previously deferred costs and the commission saw no other way to read that provision other than to require the exclusion of those costs. What if, why not read it so that the relevant retroactivity event is the regulatory decision? The amendment covers future regulatory decisions and ensuing debits, credits, deferrals, amortizations. Because, Your Honor, the provision excludes the effects that result from a regulatory decision and the effects are debits and credits such that it causes either the deferral or the recovery of current year costs or the amortization of previously deferred costs. And here we had the effect of the 2005 regulatory decision that caused the amortization of previously deferred costs in 2009. I assume there's some interpretive principle that you use to construe tariff amendments, if at all possible, to be consistent with energy law. Shouldn't there be a similar interpretive principle to construe tariff amendments, if at all possible, to be consistent with ordinary accounting rules and understandings? Your Honor, the commission did not find this provision to be susceptible of the contrary interpretation. And in the filed rate context, the filed rate is paramount. And this is, you can see this in all of the prior bandwidth proceedings. In every case, Louisiana has had a problem with the function of one of the provisions in the bandwidth tariff. And in every case, this court or the Fifth Circuit has said the filed rate is the filed rate. And if it is inequitable, it's a function of the filed rate doctrine. I understand that. And clearly, you have a plausible, if not very strong textual argument, which you've laid out quite capably. But it does produce very strange accounting, right? I mean, suppose, take this out of the bandwidth context. And just imagine that you all are regulating how an electric company can recover its capital costs. And it would be irrational to say when an investment is made, the cost can't be immediately recovered, because it has to be compensated. Well, you know what, we're changing the rule. We now think that the cost can be recovered right away. But we're not going to let you recover the outstanding amount of that investment. I mean, I can't think of any reason why a regulator would ever do that for a category of expenses here that everyone concedes are legitimate. And in the abstract, the company should be able to recover for. Why would anyone ever do it that way? Your Honor, nobody is suggesting that it was done that way on purpose with regard to this particular deferral, because this particular deferral was not an issue at the time that this contract, that this tariff provision was entered into. But the thing you have to remember is that unanticipated consequences often arise in filed rate doctrine cases. It usually arises because some unanticipated event occurs, and the tariff language applies in some way that wasn't expected. But it nevertheless is the filed rate, and it has to be enforced as it is written. And it can be changed in advance, prospectively, either by the utility filing under 205 or by somebody filing a complaint under 206. But this court has been very clear that once it is the filed rate, and this has been the filed rate in a final approved order since 2009, that it cannot be changed. It cannot be changed for equitable reasons. And this is what the court said in that even though there they had unanticipated consequences from the polar vortex that resulted in generators having to pay, take great losses to generate power, it was nevertheless, there was a rate cap, and it was the filed rate, and there was nothing that could be done about that. Ms. Carey, you've taken the position, I think, quite clearly in the briefing also today that FERC believes that the challenge orders are unambiguous. And so if we were to find any ambiguity, then we would have to remand, right? I believe that's right, Your Honor. I believe the law is that the commission must then be given an opportunity to interpret the ambiguity if the court finds there is ambiguity. And in terms of what we look to determine whether it's impermissibly retroactive or not, is it the regulatory determination? Or in your view, it's the amortization itself? It is the effect. What is excluded under the PERC variable is it excludes the effect, which is either the deferral or the amortization. And the amortization is not in the current year. And so we are excluding a cost that is being booked in the current year. So it's not a retroactive- But the bandwidth calculation, so it became effective in 2009, and it applied to the 2008 bandwidth calculation. And in your view, that's not retroactive because it's just referring to cost data and not charging? Your Honor, the bandwidth every year applies to the prior year cost, and nobody has ever found that to be retroactive rate making. And I would make the point also that the fact that this 2009 tariff was going to apply to the 2008 cost was decided back in the tariff order, which is at the Joint Appendix 1357 to 1358. In that order, the Commission expressly granted Entergy's request that the amendment be effective May 31, 2009, so that it would apply to the bandwidth calculations in 2009, which are based on 2008 costs. So that is part of the filed rate here, and that is settled in a 2009 order that is a final order that was never appealed. To the contrary, as the Commission pointed out, Louisiana supported the filing and supported the issuance of this order, accepting Entergy's tariff filing. So the fact that it applies appropriately to the 2008 cost has been decided since 2009, and that's not before the Court now. That is no longer an issue. So the question of how petitioners, you know, you rely heavily on the last part of the disputed language, and they rely pretty substantially on debits and credits, which would seem to pair the two. And your response to that is no ambiguity because? Because debits and credits, it defines what effects means. Effects are debits and credits. But what the provision goes on to say is that it excludes the effects, debits and credits, resulting from a regulatory decision that causes either the deferral of the recovery of current year costs or the amortization of previously deferred costs. The provision separates the two if it causes either one or the other, recognizing that they happen in different years. But a regulatory decision is the, I mean, and this is, you know, again, Judge Katz's first question to Mr. Fontham, if the focus for purposes of prospectivity is a regulatory decision, then if the regulatory decision has only debits and no credits or only credits and no debits, fine, then you have the or in the last part of the language decoupling them. But where you have one regulatory decision that has both debits and credits, why is the clearest reading of the language not that it either applies to the debits and credits or it doesn't apply to either? Your Honor, as Mr. Fontham was explaining earlier, the debits and credits, for these deferrals, you have to have both because one takes away and one gives back. Exactly. They happen in or is because in any given year, it'll be one or the other, but it won't be both. And so in any given year, you're applying either the new deferral or you're looking at the amortization of previously deferred costs. Exactly. But not both. But not both. Right, exactly. So you and me agree on the or, but the question then is, was this language meant, in terms of the first application, to sever the one half of a regulatory effect from the other? Your Honor... Which seems like there's a, I don't know, as a matter of just sort of background accounting and FERC practice, I haven't seen a case. I mean, I understand that there are anomalies, as you were pointing out, from weather conditions or things that make a rate disadvantageous once it is ultimately paid, but I haven't seen another situation in which deferral and amortization decisions were severed in this way. Is that something that is more familiar to you than I'm aware of? Well, I'm not aware that this comes up very often. The bandwidth tariff, because it compares production costs, has many aspects to it that are unique in the world of tariffs. This isn't a common situation that you would be in the position of trying to decide what goes into a tariff that compares production costs. And it's not that nobody is suggesting that at the time they wrote this language, they had this situation in mind. But the problem is that now that we are here, the Commission could not see a way that the amortization of previously deferred costs would not exclude the amortization of the previously deferred costs from 2005, because that seems to be exactly, it seems to exactly address the at the time. But the way it is written, it seems to directly address the situation. I see I am out of time if there are no further questions. All right. Do my colleagues have any more questions? No, thank you. Okay. Thank you. Mr. Fonthan, why don't you take two minutes? Thank you, Your Honor. I'd like to address the question Judge Katz has raised, and I think it also goes to what Judge Pillard asked about. Your Honor, if a utility got a deferral, and the Commission tried to change the rules in the middle of the stream during the amortizations, that would unlawful retroactive rate making. It does not happen. You have granted a deferral in which the implicit rule is you're going to be able to collect it over X number of years. That's required by the accounting rules, and that's basically in the deferrals we've granted, we have to specify how they're going to be collected. You try to change the rules, it's retroactive rate making, and that goes to Judge Pillard's point. The focus is on the decision. It has to be on the decision because the decision is what creates two things, a credit and subsequent debits, a deferral and subsequent amortizations. You can't focus on one without covering the other, which means it has to going forward amendment applicable to new deferrals and subsequent amortizations. Thirdly, everybody agrees that the intent of this amendment was only to apply to deferrals going forward and their effects. Everybody agrees with that. Now they say, well, the language doesn't say that, but that is what everyone agrees, every witness at the hearing, the settlement, the filing letter, energy proposes that this apply to deferrals going forward in 2009. They constructed this to evade that. So that's my argument and appreciate the rebuttal time. All right. Thank you, counsel. Your case is submitted.
judges: Henderson, Pillard, Katsas